# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4304 | **DATE** | 7/2/2002 |
| **CASE TITLE** | Zaccagnini vs. Chas. Levy Circulation Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, CLCC's motion for summary judgment (11-1) is granted. Judgment is entered in favor of defendant. The trial date of 1/6/03 is vacated

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 11 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 18 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

**DOCKETED**

**JUL 1 1 2002**

| | | |
|---|---|---|
| JOHN ZACCAGNINI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 01 C 4304 |
| | ) | |
| CHAS. LEVY CIRCULATING COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff John Zaccagnini worked as a truck driver for Chas. Levy Circulating Company ("CLCC") from October 1994 until he was laid off as part of a reduction in force in March 1997. Zaccagnini has sued CLCC under the Age Discrimination in Employment Act ("ADEA"), alleging that the company failed to rehire him a few months after the RIF due to unlawful age discrimination. This case is before the Court on CLCC's motion for summary judgment. For the reasons outlined below, the motion is granted.

## FACTUAL BACKGROUND

CLCC is a magazine and newspaper wholesaler that also sells paperback books. From October 1994 until March 1997, Zaccagnini was employed as a truck driver delivering magazines and books to retail sellers. As a CLCC driver, Zaccagnini was represented by the International Brotherhood of Teamsters Local No. 706. The parties agree that as a union member, Zaccagnini was covered by the collective bargaining agreement ("CBA") between CLCC and Local 706. They disagree, however, as to whether the CBA was the exclusive source of the terms and conditions of his employment. Zaccagnini claims that the CLCC policy manual applies to



employees covered by the CBA unless there is a conflict between the two. CLCC asserts that the policy manual does not apply to union employees at all.

In or about March 1997, Zaccagnini, who was 51 years old, was laid off in a reduction in force along with ten other employees ranging in age from 23 to 45. Chuck Lynch, CLCC's former Vice President, informed Zaccagnini that he was being laid off pursuant to the terms of the CBA because his route was being eliminated and there was not enough work at the company. Lynch also allegedly told Zaccagnini that he was a good worker and that he (Lynch) would rehire Zaccagnini if CLCC needed additional drivers in the future. Zaccagnini does not allege that there was anything discriminatory or improper about his layoff.

In April 1997, Kevin King was hired as CLCC's Delivery Manager. Sometime around June 30, 1997, King instructed Angie McLeod, Human Resources Generalist, to interview four men for positions as drivers: Angel Rodriguez (30), Andrea Staten (35), Orion Hecker (31) and Jimmy Santiago (32). CLCC generally looks to the Union to find applicants for the driver position, and all four men had been recommended for hire by the Union. Zaccagnini had reportedly informed both Union President Tony Judge, Jr., and the highest-ranking Union official Tony Judge, Sr. that he was available for rehire. For reasons unexplained in the parties' submissions, the Union did not submit Zaccagnini's name to King. King hired Rodriguez, Staten and Hecker between June 30 and August 11, 1997. He hired Santiago on October 6, 1997. King was not required to hire the individuals recommended by the Union, but he has always done so since he began working at CLCC. There is no evidence that Lynch was involved in the hiring of the four drivers, or that he ever spoke to King about it.

By letter dated August 31, 1997, Zaccagnini filed a grievance with the Union alleging that he was discriminated against because CLCC failed to rehire him despite his seniority and availability. CLCC maintains that it has an unwritten policy and practice of not rehiring former union employees. Zaccagnini disputes that such a policy exists, and claims that this situation is covered by the CLCC policy manual, which expressly contemplates the rehiring of former employees "on a case by case basis." There is no evidence that any other driver ever sought reemployment with CLCC, or was actually rehired by the company. It is undisputed that none of the drivers laid off in or about March 1997 was recommended by the Union for rehire, and that none of them was rehired by CLCC.

## DISCUSSION

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, courts must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Zaccagnini claims that CLCC failed to rehire him as a driver because of his age. To prove this claim, Zaccagnini must establish that he was not rehired by CLCC because of intentional discrimination. He may meet this burden by either providing direct evidence of discrimination or by proceeding under the indirect burden-shifting method set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Zaccagnini provides no direct evidence of discrimination and instead proceeds under the indirect method.

3

Under the indirect proof method, Zaccagnini must first establish a prima facie case of discrimination. To do this, he must come forward with evidence from which a jury could conclude that: (1) he belongs to a protected class; (2) he applied for and was qualified for the position sought; (3) he was not hired; and (4) the defendant hired a substantially younger person or continued to seek applications. *Kralman v. Illinois Department of Veterans' Affairs*, 23 F.3d 150, 153 (7th Cir. 1994).

If Zaccagnini can establish a prima facie case, the burden then shifts to CLCC to provide a legitimate, nondiscriminatory reason for the employment decision. *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 398 (7th Cir. 1997). If CLCC does so, the burden shifts back to Zaccagnini to show that CLCC's stated reason is just a pretext for discrimination. *Id.* Though the burden of producing evidence shifts between the employee and the employer, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Center. v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

### 1. Zaccagnini's Prima Facie Case

CLCC maintains that Zaccagnini cannot satisfy the second or fourth requirements of his prima facie case because he never applied for the open driver positions and was not similarly situated to Rodriguez, Staten, Hecker or Santiago. Def. Reply, pp. 4-8. Zaccagnini never submitted a written application for the driver positions, but he asserts that he "applied" for them by notifying Lynch in March 1997 of his interest in being rehired. The Court questions whether this constitutes a job "application" for a position that did not even exist yet. *See, e.g., Kelly v.*

4

*Apollo Travel Services Partnership*, No. 98 C 2506, 2000 WL 1170074, at *7 (N.D. Ill. Aug. 16, 2000) ("[m]erely expressing interest in or inquiring about a position" did not constitute an application for the position which had not been created yet).

Zaccagnini also argues that he applied for the positions by filing his grievance with the Union on August 31, 1997. CLCC does look to the Union for its list of potential job applicants, and the Union knew of Zaccagnini's interest in the driver position when he filed his grievance. In addition, King knew about Zaccagnini's grievance prior to hiring Santiago. Though we are not overwhelmed by this evidence, it is sufficient to meet the minimal burdens of Zaccagnini's prima facie case. *Roberts v. Separators, Inc.*, 172 F.3d 448, 451 (7th Cir. 1999) ("even if we are not sure that [the plaintiff] meets the requirements of the second prong, 'this court may advance to an ultimate issue in a summary judgment analysis and consider the discrimination question notwithstanding a dispute over a fact necessary for a prima facie case'").

CLCC also maintains that Rodriguez, Staten, Hecker and Santiago are not similarly situated to Zaccagnini: unlike Zaccagnini, the four drivers had never worked for CLCC or been laid off in a RIF, and they were not subject to the company's claimed no-rehire policy. Def. Mem., pp. 6-7. Nevertheless, all four individuals were substantially younger than Zaccagnini when they were hired and had similar or less qualifications for the driver position. At this stage of the analysis, Zaccagnini has offered sufficient evidence to proceed beyond the prima facie phase of his case. *Kralman*, 23 F.3d at 155-56 (prima facie case satisfied where employer hired an individual substantially younger than the plaintiff); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 619 (7th Cir. 2000) (individual is "substantially younger" if he is at least ten years younger than the plaintiff).

5

## 2. CLCC's Explanations

CLCC has offered two legitimate, nondiscriminatory explanations for not rehiring Zaccagnini: the company has a policy and practice of not rehiring former union employees, and the company only hires individuals recommended by the Union. To show that these explanations are a pretext for discrimination, Zaccagnini must present evidence from which a jury could infer that these were not the real reasons for CLCC's decision not to hire him. *Wilson v. AM General Corp.*, 167 F.3d 1114, 1119-20 (7th Cir. 1999).

### a. *CLCC's No-Rehire Policy*

Zaccagnini argues vehemently that CLCC's claimed policy of not rehiring former employees does not exist based on the following facts: (1) CLCC's Vice President offered to rehire Zaccagnini if drivers were needed in the future; (2) King never mentioned the no-rehire policy as a reason for not rehiring Zaccagnini in connection with the Union grievance; (3) the no-rehire policy conflicts with the CLCC policy manual which expressly contemplates rehiring former employees; (4) CLCC cannot be said to have a "practice" of not rehiring laid off drivers because no drivers were ever laid off prior to March 1997, and no former drivers ever sought reemployment prior to Zaccagnini; and (5) the Union would not object to the rehiring of former employees. Pl. Mem., pp. 11-14.

CLCC acknowledges that Zaccagnini's evidence, if believed, "cast[s] doubt on CLCC's no-rehire policy." Def. Reply, p. 9. The Court agrees. This doubt creates a genuine issue of fact sufficient to preclude summary judgment with regard to this explanation. *See Piraino v. International Orientation Resources, Inc.*, 84 F.3d 270, 275 (7th Cir. 1996) ("when the existence of a uniform policy or practice is in doubt, it cannot serve as a reason for discharging [the

6

plaintiff]"). However, this does not end the inquiry because CLCC has articulated another explanation for not rehiring Zaccagnini: its policy of hiring individuals recommended by the Union. *See Russell v. Acme-Evans Co.*, 51 F.3d 64, 69 (7th Cir. 1995) ("[t]he fact that some of [the employer's proffered reasons] were successfully called into question by [the employee's] deposition or affidavit does not defeat summary judgment if at least one reason for [the adverse employment action] stands unquestioned").

### b. *CLCC's Hiring Practices*

CLCC asserts that it looks to the Union to recommend job applicants for the driver position, that it has always hired individuals from the names submitted by the Union, and that the Union did not submit Zaccagnini's name for the open positions. Def. Reply, p. 10. Zaccagnini does not dispute that the Union never submitted his name to King and that he had no right to be recalled pursuant to the CBA. *Compare Huff v. UARCO, Inc.*, 122 F.3d 374, 386 (7th Cir. 1997) ("deviations from an otherwise observed seniority system may . . . be relevant on the issue of whether the employer's decision was age-neutral or age-conscious"). Nor has he produced any evidence that King or anyone else at CLCC has ever hired drivers whose names did not appear on the Union's recommendation list.

In addition, Zaccagnini cannot identify any younger employees who were not recommended for hire by the Union, but who were nonetheless hired by CLCC. *Ragland v. Rock-Tenn Co.*, 955 F. Supp. 1009, 1021 (N.D. Ill. 1997) (declining to find pretext where the plaintiff "produced no evidence that [the employer] systematically treats younger workers more favorably than older employees"). And there is absolutely no evidence that King or any other CLCC employee disliked older workers or had any motive whatsoever to maintain a younger

7

workforce. To the contrary, nearly half of the employees laid off in March 1997 were under the age of 40. *See, e.g., Senner v. Northcentral Technical College*, 113 F.3d 750, 758 (7th Cir. 1997) (affirming summary judgment against plaintiff who "produced no evidence from which it could *reasonably* be inferred that [the defendant] *more likely than not* screened its candidates and decided to hire Kanz rather than [the plaintiff] because she was . . . under forty").

In sum, Zaccagnini has not produced any evidence that CLCC would have hired him "but for" his age. *Berlett v. Cargill, Inc.*, 780 F. Supp. 560, 562 (N.D. Ill. 1991). Accordingly, CLCC is entitled to summary judgment.

## Conclusion

For the reasons stated above, CLCC's motion for summary judgment [docket item 11-1] is granted. The Clerk is directed to enter judgment in favor of defendant. The trial date of January 6, 2003 is vacated.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 2, 2002

8